IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CRYSTAL B.[1]                                    )
                                                 )
                    Plaintiff,                   )
                                                 )
vs.                                              )   Civil No. 25-cv-28-RJD[2]
                                                 )
COMMISSIONER OF SOCIAL SECURITY,                 )
                                                 )
                    Defendant.                   )
                                                 )

## MEMORANDUM and ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency

decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C.

§ 423.

## Procedural History

On March 29, 2022, Plaintiff applied for DIB, claiming disability beginning August 31,

2021. Tr. 15, 127-131. After a video hearing held on August 29, 2023, the Administrative Law

Judge ("ALJ") issued an unfavorable decision on September 15, 2023. Tr. 12-38, 43-63. The ALJ's

decision denying the claims became final and appealable on November 7, 2024, when the Appeals

Council declined Plaintiff's request for review. Tr. 1-6, 124-126. *See* 20 C.F.R. §§ 404.955,

404.981, 416.1455, 416.1481 (describing effect of Appeals Council's denial of review).

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P.
5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §
636(c). Docs. 12, 26.

**Issues Raised by Plaintiff**

Plaintiff raises the following issues:

1. The ALJ improperly formulated the mental residual functional capacity ("RFC"), inconsistent with the ALJ's own findings regarding Plaintiff's limitations. The ALJ's failure to include the proper restrictions resulted in no evidence that Plaintiff would be able to perform the work found suitable at Step 4 and demonstrates why the ALJ should not have used the Medical-Vocational Rules at Step 5.

2. The ALJ erred by creating an RFC contrary to the record as a whole, including Plaintiff's statements regarding her left upper extremity. Plaintiff described her inability to lift her left arm overhead. The ALJ improperly rejected Plaintiff's testimony and failed to properly evaluate the medical evidence that supported her complaints. Plaintiff's inability to lift overhead prevents her ability to perform her past work as found by the ALJ.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statute. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520. An affirmative answer at either Step 3 or Step 5 leads to a finding that the plaintiff is disabled. A negative answer at any Step, other than at Step 3, precludes a finding of disability. The plaintiff bears the burden of proof at

Steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Importantly, the Court's scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal citations omitted). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Yet, while judicial review is deferential, "it is not abject." *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010). The Court does not act as a "rubber stamp" for the Commissioner. *Ehrhart v. Sec'y of Health & Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992).

## **The Decision of the ALJ**

The ALJ followed the five-Step analytical framework described above. The ALJ found that Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2026. Tr. 17. At Step 2, the ALJ found that Plaintiff suffered from the severe impairments of mixed sensory/motor polyneuropathy; Bell's palsy; hypertension; adverse effect/reaction to Covid-19

vaccination; and obesity. Tr. 17. He also found that Plaintiff's medically determinable mental impairments of anxiety and depression, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and were therefore nonsevere. Tr. 18-19. The ALJ analyzed the four broad domains of mental functioning and found that Plaintiff had mild limitations in each, including her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. Tr. 18-19. The ALJ relied, among others, on Plaintiff's objective medical records and daily activities. *Id.*

At Step 3, the ALJ concluded that Plaintiff's impairments did not meet or equal a listed impairment. Tr. 19. The ALJ found that Plaintiff retained the following RFC:

> to perform light work with the following additional limitations: occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights.

Tr. 20. At Step 4, citing the vocational expert's testimony, the ALJ determined that Plaintiff could return to her past relevant work as either a production worker or as a surgical technician. Tr. 25. Accordingly, at Step 5, the ALJ concluded Plaintiff was not disabled from August 31, 2021, through the date of the decision. Tr. 25. The ALJ additionally found that Plaintiff could also perform unskilled, sedentary work under the regulations' medical-vocational guidelines. Tr. 25-26, citing 20 C.F.R. Part 404, Subpart P, App'x 2.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by

Plaintiff.[3]

### 1. Agency Forms

Plaintiff filed an initial claim for disability on March 29, 2022, due to the following illnesses, injuries, or conditions: left eye problems, pericarditis, shortness of breath, breathing issues, left hand issues, left leg issues, feet numbness, chest pain, and seizures. Tr. 15, 21, 65.

Plaintiff submitted an Adult Function Report dated October 20, 2022. Tr. 178. She reported living in a house with her children. Tr. 21, 177. She cleans the house, does laundry, takes care of her children and pets, drives, goes out alone, shops in stores, manages money, and spends time with others (in person, phone, text). Tr. 21, 177-79. She reported sleep issues, stating she is always tired. She reported physical issues with personal care. She denied needing reminders to take care of personal needs or to take medicine, but sometimes needs reminders to go places. Tr. 21, 179-81. She further denied problems getting along with others, but reported that she does not handle stress or changes in routine well. Tr. 21, 181-82. She reported that her conditions specifically affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, see, remember, and use her hands. Tr. 21, 182. She can walk 75 yards before needing to stop and rest. Tr. 21, 182. She does not finish what she starts, pays attention for "not long", sometimes has to reread written instructions, and is able to follow spoken instructions. Tr. 21, 182. She reported using a scooter to get around at stores and braces when her joints keep giving out. She completed two years of college and denied receiving any special education services. Tr. 21, 183.

---

[3] The parties did not include a summary of the relevant medical evidence and opinions in their briefs and only discussed those relevant records in their arguments. Doc. 15, pp. 1-2, Doc. 25, pp. 1-2). Consequently, the Court will discuss the relevant medical evidence during its analysis of the parties' arguments, referring to the summary of the medical evidence articulated by the ALJ as needed.

## 2. Plaintiff's Testimony

At her hearing, Plaintiff testified that she is unable to work due to her hands being drawn in, weakness on the left side of her body, problems lifting her left arm above her head, neuropathy in both arms/legs, extreme bone and joint pain, problems standing or sitting for long periods of time, problems seeing well, trouble remembering things/focusing/concentrating, Bell's palsy symptoms, seizures in face and shaking over her body, chest pain, shortness of breath, bad anxiety, and depression. Tr. 20. She reported trying several medications but is currently taking Tylenol for pain, medication for high blood pressure, and has prediabetes and skin problems. Tr. 20. She spends her days sitting in a recliner or her bed. Tr. 20. She denied doing any chores around the house and has the television on for the noise. Tr. 20. She uses a scooter when she shops in the store. She stated she was divorced four or five years ago, has not remarried, and lives with her two children (17 and 19-year-olds). Tr. 20-21.

## 3. Vocational Expert's Testimony

In response to a question about a hypothetical reflecting the ALJ's RFC finding, the Vocational Expert ("VE") compared the requirements of Plaintiff's past relevant work to Plaintiff's restrictions and testified that Plaintiff was capable of work as a surgical technician and a production worker as generally performed. Tr. 25, 59-62.

## Analysis

Plaintiff first challenges the ALJ's failure to incorporate in the RFC finding any limitations to Plaintiff's mental functions despite finding at Step 2 that Plaintiff had a medically determinable mental impairment of anxiety and depression, causing minimal limitations. Plaintiff further alleges that the ALJ erred in failing to include in the RFC finding any limitations regarding Plaintiff's

inability to lift her left upper extremity. The Court will address each argument in turn.

### 1. Assessment of Mental Limitations

Plaintiff first argues that the ALJ erred by failing to incorporate the mild mental limitations he found in Step 2 of his analysis into the RFC assessment or to discuss the reasons for rejecting them. Secondarily, Plaintiff argues that the ALJ erred in failing to find even more severe mental limitations at Step 2 of his analysis. Doc. 15, pp. 3-14; Tr. 18-19. The Court finds no error.

When assessing a claimant's RFC, the ALJ must determine "what an individual can still do despite . . . her limitations based upon medical evidence as well as other evidence, such as testimony by the claimant or [her] friends and family." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (cleaned up and internal citations omitted). The Seventh Circuit has repeatedly emphasized that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record," including any mild limitations in any of the areas of mental functioning. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (remanding an ALJ's denial of benefits due to failure to incorporate into the hypothetical to the VE Plaintiff's mild limitations in understanding, remembering, and carrying out simple instructions and her moderate limitations in concentration, persistence, and pace that were supported by the medical record). When formulating an RFC, the ALJ must include a narrative discussion of how the evidence supports each conclusion and cite specific medical facts and non-medical evidence. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). Even though the ALJ does not need to use any specific words, he must still consider the entirety of the record, including limitations that are not severe.

Remand is required if the ALJ's decision lacks evidentiary support or is so poorly articulated that it prevents meaningful review by the court. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Further, an ALJ's assessment of a claimant's reports regarding the "intensity, persistence, and limiting effects of" her subjective symptoms will not be disturbed unless it is "patently wrong," meaning that it "lacks any explanation or support." *Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *5 (7th Cir. Aug. 19, 2021) (citation and internal quotation marks omitted). At the same time, when that assessment rests on "objective factors or fundamental implausibilities rather than subjective considerations," such as the demeanor of the claimant, the court has "greater freedom to review" that assessment. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation and internal quotation marks omitted). An ALJ must "adequately explain" whether the claimant's report of subjective symptoms is persuasive or not and discuss "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p). Although an ALJ does not need "to address every piece of evidence," some legitimate reason must be articulated to establish an "accurate and logical bridge from the evidence to [the] conclusion." *Clifford*, 227 F.3d at 872 (citation omitted).

Here, at Step 2, the ALJ engaged in a detailed analysis of the four mental function areas, known as the "Paragraph B criteria." Tr. 18-19. The ALJ concluded that Plaintiff had no more than mild difficulties in every domain of mental functioning and that there was no more than a minimal limitation in Plaintiff's ability to do basic work activities that did not amount to a severe impairment. Tr. 18-19. Specifically, as to Plaintiff's capacity to understand, remember, or apply information, the ALJ considered Plaintiff's complaints that she "does not finish what she starts,

pays attention for "not long", and sometimes has to reread written instructions. Tr. 18. As to her ability to interact with others, the ALJ considered Plaintiff's allegations that she "does not handle stress or changes in routine well." Tr. 18. As to her capacity to concentrate, persist, or maintain pace, the ALJ noted that Plaintiff has reported issues with sleep and that "she is always tired." Tr. 18. He mentioned again Plaintiff's complaints that she "does not handle stress or changes in routine well, does not finish what she starts, pays attention for "not long", and sometimes has to reread written instructions. Tr. 18-19. As to the capacity to adapt and manage oneself, the ALJ acknowledges Plaintiff's reports that she sometimes needs reminders to go to places and that she does not handle stress or changes in routine well. Tr. 19. In concluding that those symptoms were not severe, the ALJ compared them with other evidence on the record, including Plaintiff's overall normal mental examination findings and her daily activities. Tr. 18-19.

At Step 4 of his analysis, the ALJ crafted an RFC that did not include any mental limitations. Tr. 20. Contrary to Plaintiff's contentions, however, the ALJ adequately articulated the reasons for not incorporating Plaintiff's mild mental function limitations into the RFC. The ALJ first explained that Plaintiff's subjective complaints, which escalated after filing for disability, were not supported by the objective record. Tr. 24. Although the ALJ did not distinguish between physical or mental complaints, this language is broad enough to encompass both. This is further supported by the fact that the ALJ went on to observe that Plaintiff's complaints of fatigue were not supported by the physical examinations, noting that she was alert and fully oriented. Tr. 24. The ALJ further pointed out that Plaintiff declined mental health referrals and demonstrated normal mental status examinations contrary to her testimony regarding her symptoms. Tr. 24.

Prior to reaching that conclusion, the ALJ had engaged in a detailed analysis of Plaintiff's

medical records from August 2021 through April 2023. Tr. 22-24. Throughout the discussion of those medical records, the ALJ pointed to Plaintiff's normal physical examination findings, citing the relevant records. While the ALJ used general language without explicitly mentioning the findings of Plaintiff's mental status examinations, review of the cited material shows that those normal findings included Plaintiff's mental function. *See e.g.*, Tr. 23-24, 857-58 (October 2021: Plaintiff was alert and oriented to person, place, and time; she was not anxious or depressed, with appropriate affect, she was not agitated, and had normal behavior), 490 (May 2022: physical examinations, including mental status, appearance, orientation, and neurological evaluation were again unremarkable), 508 (July 2022: same), 539-39 (August 2022: same), 717, 721, 723, 724 (December 2022 consultative examination with normal mental status examination), 287 (December 2022 mental status examination showed Plaintiff was awake and alert, was oriented to person, place, time, and situation, psychological examination showed Plaintiff was awake, alert, with orientation to person, place and time, with behavior, mood, and affect within normal limits, while the constitutional evaluation showed that Plaintiff was in obvious moderate distress, which the ALJ failed to mention). This supports the ALJ's conclusion that Plaintiff's subjective reports were not supported by the objective record and her normal mental status examinations. Tr. 24.

Further, the ALJ specifically discussed Plaintiff's complaints of mental limitations in reference to her medical records from March and June 2023. Tr. 23. He pointed to Plaintiff's medical records from March 2023, when Plaintiff complained of fatigue, poor sleep, and impaired concentration, but the ALJ noted that despite her many symptom complaints, Plaintiff demonstrated normal examination. Tr. 23; 994-97. Review of the cited record shows again that Plaintiff was alert, cooperative, and fully oriented, with a normal attention span, ability to

concentrate, and to name objects and repeat phrases. Tr. 997. The ALJ also pointed to Plaintiff's medical record from June 2023, when Plaintiff continued to complain of feeling bad all the time, fatigue, and joint pain, and stated that she "just sits around and prefers to recline," and stated that her "examination was normal." Tr. 23.

Overall, the ALJ's discussion of the medical records supports his conclusion that Plaintiff's normal mental status examinations were contrary to her testimony regarding her symptoms. Tr. 24. The ALJ was not required to incorporate in the RFC mild mental limitations that were not supported by the medical record. "The ALJ needed only to include limitations in [the] RFC determination that were supported by the medical evidence and that the ALJ found to be credible." *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011); *Terri E. G. v. Comm'r of Soc. Sec.*, No. 3:21-CV-447-DWD, 2022 WL 1570501, at *6 (S.D. Ill. May 18, 2022) (noting that the consistently normal mental status examination findings supported the ALJ's decision not to incorporate in the RFC Plaintiff's mild mental limitations).

Importantly, in crafting the RFC, the ALJ relied on the medical opinions on record, none of which ascribed any mental functional limitations to Plaintiff's alleged mental impairments. Tr. 24. The ALJ explained that he found generally persuasive and supported by the overall record the medical opinion of Dr. Rethorst. Tr. 24; 547. While the ALJ did not elaborate on Dr. Rethorst's findings in that paragraph, he cited Dr. Rethorst's medical notes from August 2022, which the ALJ had also discussed earlier in that section. Tr. 23, 24, 539, 546-47. That record shows that in March 2022, Dr. Rethorst had opined to a "reasonable degree of medical certainty" that Plaintiff's anxiety and depression had worsened due to "adverse side effects of Covid Vaccination and her prolonged recovery with complex neuro, cardio, and pulmonary systems involved, including her inability to

return to work." Tr. 24, 547. But by June 2022, Dr. Rethorst opined that Plaintiff had "normal/improved" objective findings. Tr. 23, 24, 538-39, 546-47. As the ALJ observed, Dr. Rethorst expressed the belief that Plaintiff would recover with time. Tr. 23, 546. Dr. Rethorst discussed Plaintiff's "*return to work light duty/restrictions*," but noted that Plaintiff could not return at that time due to the state's mandatory full Covid-19 vaccination requirement. Tr. 23, 546 (emphasis added). Dr. Rethorst offered a referral to mental health, which Plaintiff declined, as well as a neuropsychological consultation regarding normal objective findings and subjective symptom reports.

Plaintiff had a consultative examination with Dr. Feinerman in December 2022. Tr. 717-24. Although the ALJ found that Dr. Feinerman's medical opinion was less persuasive because it did not detail Plaintiff's actual function-by-function abilities, he found that Dr. Feinerman's physical examination was supportive of the ALJ's RFC findings. Tr. 24, 717-24. Review of the cited record shows that while Plaintiff complained, among others, of decreased memory, anxiety, and depression, her mental status examination was normal. Tr. 23, 24, 717, 721, 723, 724 ("Mental Status: Claimant is oriented to person, place, and time. Appearance, behavior, memory, concentration, and ability to relate are normal").

Accordingly, the ALJ's decision not to incorporate Plaintiff's mild mental limitations in the RFC is adequately supported by the medical opinions on record, none of which ascribed Plaintiff with such limitations. *Streikus v. O'Malley*, No. 22-2484, 2024 WL 983568, at *5 (7th Cir. Mar. 7, 2024) (finding that the ALJ did not err when he did not incorporate Plaintiff's alleged limitations on his concentration, persistence, and pace in the RFC in the absence of any medical opinion to that effect).

Plaintiff argues that *DeCamp*, *Charles M.*, and *Alesia v. Astrue*, 789 F. Supp. 2d 921 (N.D. Ill. 2011) supports her position that the ALJ should have fully discussed and incorporated Plaintiff's mild limitations in the RFC. Plaintiff's reliance on those cases is misplaced. Contrary to this case, in *DeCamp*, the ALJ cited a medical opinion in support of his RFC finding but failed to incorporate into the RFC that consultant's opined mild and moderate limitations in mental functioning without explaining the reasons for doing so. *DeCamp*, 916 F.3d at 675. *In Charles M*C, the court found that the ALJ committed reversible error by finding mild limitations in the claimant's mental function in Step 2 of his analysis but completely failing to discuss those limitations in Step 4 or to incorporate them into the RFC. *Charles M*C, No. 18 C 6949, 2020 WL 231080, at *3 (N.D. Ill. Jan. 15, 2020). Likewise, in *Alesia*, the court found that the ALJ erred in failing to consider the impact of the claimant's non-severe depression on her ability to perform her past relevant work because he neither included those limitations in the RFC finding nor discussed reasons for rejecting them. *Alesia*, 789 F. Supp. 2d 921. Here, contrary to Plaintiff's contention, the ALJ adequately discussed in his Step 4 analysis the reasons for rejecting Plaintiff's alleged mental limitations by pointing to Plaintiff's refusal of mental health referral, the consistently normal examination findings, and the medical opinions on record. Notably, Plaintiff has not pointed to any medical opinion or objective medical record that would support a finding of limitations in Plaintiff's mental functioning.

Rather, this case is similar to *Felts v. Saul*, 797 F. App'x 266, 269 (7th Cir. 2019). There, the Seventh Circuit rejected a challenge that the ALJ did not discuss in the RFC analysis the cumulative effect of his non-severe depression and concentration problems with his severe physical impairments. As in this case, the court noted that while the RFC analysis showed that the

Page **13** of **21**

ALJ focused on the claimant's physical impairments, the ALJ also considered the claimant's reported concentration problems "in combination" with the physical limitations. *Id.* at 270. The court explained that the ALJ discredited the claimant's statements that he could not concentrate due to the side effects of the medications. The ALJ supported that finding by pointing to the medical record, which lacked any compelling complaints of concentration problems and showed that the claimant was alert during exams and able to respond appropriately. Further, the claimant's assertion that he suffered serious concentration problems was undermined by evidence that he was able to perform many daily activities, including managing personal care needs, preparing meals, reading, watching TV, driving, and traveling alone. *Id.* at 270-71.

In sum, while the ALJ did not devote a separate section in Step 4 discussing the reasons for not incorporating Plaintiff's mild mental limitations into the RFC, he adequately explained those reasons throughout his discussion of Plaintiff's medical records, reports of subjective symptoms, and medical opinions by engaging in a combined analysis of Plaintiff's physical and mental impairments. In doing so, the ALJ built a logical breach between the evidence and his conclusion that sufficiently allowed the Court "to assess the validity" of his findings and afford Plaintiff a "meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Because the ALJ's decision was substantially supported by the evidentiary record, as set forth above, the Court rejects Plaintiff's invitation to reweigh the evidence. *See Steele*, 290 F.3d at 940 (remand is required if the ALJ's decision lacks evidentiary support or is so poorly articulated that it prevents meaningful review by the court).

Plaintiff also challenged the ALJ's assessment of the Paragraph B criteria at Step 2. She argues that the record supported a finding of limitations more severe than mild. She points to the

Page **14** of **21**

ALJ's discussion of Plaintiff's daily activities, her completion of college without special education services, and objective mental health findings, among others, which she argues were irrelevant to the analysis. But in addition to the discussion of those factors, the ALJ pointed to Plaintiff's normal mental status examinations in his discussion of every single domain of mental functioning. Tr. 17-18. Plaintiff did not point to any objective medical record or medical opinion showing that she had more severe than mild limitations in any of those domains. *Streikus*, 2024 WL 983568, at *5 (finding no error when the ALJ did not incorporate Plaintiff's limitations on his concentration, persistence, and pace in the RFC in the absence of any medical opinion to that effect).

In any case, the ALJ's determination at Step 2 does not affect the outcome of this case. The ALJ recognized other severe impairments and proceeded with the evaluation process. *See Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments."). As already explained, in Step 4 of the evaluation, the ALJ adequately considered Plaintiff's reports of mental limitations along with her other severe impairments and determined that they were not disabling. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010).

### 2. **Physical Limitations**

Plaintiff also challenges the ALJ's RFC findings regarding her physical limitations and specifically her inability to lift her left arm overhead. The ALJ found that Plaintiff has the RFC "to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ladders, ropes, and scaffolds. She can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor

ventilation, and hazards such as unprotected heights." Tr. 20. Plaintiff argues that the RFC failed to account for her attested inability to lift her left arm and that the ALJ improperly assessed her relevant testimony and the medical record. The Court finds no error.

An ALJ's assessment of a claimant's reports regarding the "intensity, persistence, and limiting effects of" her subjective symptoms will not be disturbed unless it is "patently wrong," meaning that it "lacks any explanation or support." *Weber*, 2021 WL 3671235, at *5 (citation and internal quotation marks omitted). At the same time, when that assessment rests on "objective factors or fundamental implausibilities rather than subjective considerations," such as the demeanor of the claimant, the court has "greater freedom to review" that assessment. *Clifford*, 227 F.3d at 872 (citation and internal quotation marks omitted). An ALJ must "adequately explain" whether the claimant's report of subjective symptoms is persuasive or not and discuss "specific reasons supported by the record." *Pepper*, 712 F.3d at 367; SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p). Although an ALJ does not need "to address every piece of evidence," some legitimate reason must be articulated to establish an "accurate and logical bridge from the evidence to [the] conclusion." *Clifford*, 227 F.3d at 872 (citation omitted).

Here, Plaintiff testified that she was unable to work due to her "hands being drawn in, weakness on the left side of her body, problems lifting her left arm above her head," and "neuropathy in both arms/legs," all triggered following her vaccination with the Moderna Covid-19 vaccine. Tr. 21. The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence. Tr. 23. The ALJ specifically noted that Plaintiff's subjective complaints, which escalated after she filed for disability, and her "mobility issues/allegations [were] not supported by [the] generally

normal objective findings." Tr. 24. The ALJ went on to explain the grounds of his decision.

The ALJ first looked at the medical record. Tr. 22-23. He acknowledged the record in January of 2022 that documented Plaintiff's left leg numbness and weakness, as well as reports of bilateral leg burning and left-hand stiffness. Tr. 22. The ALJ also recognized that Plaintiff reported her symptoms worsened, and by May of 2022, objective findings confirmed Plaintiff's reduced strength of the lower and upper extremities, and reduced range of motion of the left shoulder. Tr. 23. Tr. 23. However, the ALJ observed that by July 2022, Plaintiff had normal grip strength and tone. Tr. 23, 508. One month later, in August 2022, the only abnormal physical observation noted on a medical examination record was that Plaintiff had a limp. Tr. 23, 538-39. Dr. Rethorst discussed with Plaintiff her normal/improved findings, neurological medications for subjective symptoms, and return to work at light duty/restrictions. Tr. 23, 538-39. Dr. Rethorst also expressed the belief that her symptoms would improve with time. Tr. 23, 24, 539. The ALJ acknowledged that in December 2022, during a consultative examination with Dr. Feinerman, Plaintiff had some decreased motion in her left shoulder, but had a strong grip and normal fine and gross manipulation. Tr. 23, 722-723. The ALJ next observed, however, that during an emergency room visit in January 2023, Plaintiff demonstrated normal strength in all extremities, a full range of motion, and a normal sensory examination. Tr. 23, 816. The ALJ also noted that Plaintiff's examinations in April did not note physical abnormalities and that Plaintiff was able to get her shoes and socks off for the examination, get dressed again, and complete the activities without guarding or signs of pain. Tr. 23, 922. The ALJ further observed that in June 2023, despite Plaintiff continuing to complain of feeling bad all the time, fatigue, joint pain, and neuropathy in her fingers, her examination was normal. Tr. 23, 983-986. The ALJ's discussion of the medical record

substantially supports his conclusion that Plaintiff's subjective complaints and specifically her "mobility issues/allegations" were not supported by Plaintiff's normal objective findings. Tr. 24.

Plaintiff takes issue with the ALJ's conclusions that Plaintiff's "*overall* strength was normal 5/5 throughout, sensation was intact, and the claimant ambulated with a normal gait," and that "[t]he medical evidence of record note[ed] the claimant's subjective complaints escalated after she filed for disability; however, objective findings do not support these subjective allegations," and that Plaintiff's subjective "allegations [were] not supported by *generally* normal objective findings." Tr. 23 (emphasis added). She argues that these statements are inconsistent with the ALJ's prior findings in his review of the medical record, which she argues demonstrated her "continued decreased range of motion of the left shoulder." It is not. The ALJ used the adverbs "overall" and "generally" to indicate his general observation of Plaintiff's physical examinations, despite some abnormal findings that he had already discussed in detail. Contrary to Plaintiff's contention, these statements are consistent with the ALJ's prior discussion of the medical records that showed Plaintiff's mostly normal physical examination, with some findings of reduced strength of the lower and upper extremities, and reduced range of motion of her left shoulder, which, however, were absent in her latest physical examinations in January, April, and June of 2023. As the ALJ pointed out, Plaintiff's treatment provider stated his belief that Plaintiff's symptoms would resolve in time, which the ALJ found supported by Plaintiff's improvement in subsequent treatment records. Tr. 23.

The ALJ also considered the medical opinions on record. Tr. 24. Two state-agency physicians, Drs. Mikell and LaFata opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently. Tr. 68, 78. Those were the same lifting/carrying abilities found by the

ALJ in his determination that Plaintiff could perform her past relevant work. Tr. 20. Drs. Mikell

and LaFata further indicated that no specific manipulative limitations were necessary. Tr. 69, 79.

In doing so, they considered the medical record showing Plaintiff's decreased range of motion in

her left shoulder and allegations of issues with her left side. Tr. 70, 80; *see Skarbek v. Barnhart*,

390 F.3d 500, 504 (7th Cir. 2004) (When the ALJ adopts physician assessments that consider a

condition, that condition is "factored indirectly into the ALJ's decision."); *Hoyt v. Colvin*, 553 F.

App'x 625, 628 (7th Cir. 2014) ("[T]he ALJ indirectly accounted for Hoyt's obesity by relying on

the medical opinions of state-agency physicians who evaluated his height and weight."). The ALJ

further noted that those opinions were also supported by the persuasive opinion of Plaintiff's

physician, Dr. Rethorst, who opined that Plaintiff could perform light-duty work with restrictions.

Tr. 546. The ALJ further discussed the opinion of the consultative examining physician, Dr.

Feinerman. Tr. 24. While in December 2022, Dr. Feinerman observed a decreased range of motion

of Plaintiff's left shoulder and the lumbar spine, he opined that Plaintiff could, among other things,

lift and carry objects and opted not to opine how much weight she could lift and carry. Tr. 24, 723.

The ALJ found Dr. Feinerman's opinion was too vague to be as persuasive as the other medical

source assessments, but did find that opinion somewhat persuasive. Tr. 24. None of those opinions

found additional lifting limitations than those adopted by the ALJ. Notably, Plaintiff does not

challenge or even reference any of those medical opinions in her brief. In fact, Plaintiff does not

point to any medical opinion ascribing her more severe limitations than those adopted by the ALJ.

Contrary to Plaintiff's contention, the ALJ adequately accounted for her alleged inability

to extend her arm overhead, which was supported by her limited range of motion and strength loss.

The ALJ restricted Plaintiff to perform light work, which by the regulation's definition involves

"lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The other jobs found by the ALJ were sedentary, meaning that they involved lifting/carrying a maximum of 10 pounds and occasionally lifting/carrying "articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). The ALJ reasonably relied on the persuasive medical opinions that had considered Plaintiff's medical records and complaints of her inability to lift her left arm, yet found no additional lifting limitations.

Plaintiff further argues the ALJ failed to explain why the RFC did not include the entirety of restrictions due to Plaintiff's adverse effect/reaction to COVID-19 vaccination, and mixed sensory/motor polyneuropathy, while offering no reason to reject Plaintiff's testimony regarding her difficulty using her left arm, in conflict with the requirements of SSR 96-8p. As instructed by SSR 96-8p, when formulating an RFC, the ALJ must include a narrative discussion of how the evidence supports each conclusion and cite specific medical facts and non-medical evidence. SSR 96-8p. As discussed above, and contrary to Plaintiff's contention, the ALJ reached his RFC assessment after a detailed discussion of the medical record and the medical opinions, as well as Plaintiff's testimony and subjective reports. Tr. 21-25. He explained that no further restrictions were necessary, primarily relying on the objective evidence and the medical assessments of Plaintiff's physician, Dr. Rethorst, state-agency physicians, Drs. Mikell and LaFata, and consultative examining physician Dr. Feinerman. Tr. 23-24. *See Crowell v. Kijakazi*, 72 F.4th 810, 817 (7th Cir. 2023) (affirming ALJ who found persuasive state-agency medical consultants' prior administrative medical findings); *Pavlicek v. Saul*, 994 F.3d 777, 781, 783 (7th Cir. 2021) (same).

Accordingly, the Court finds that the ALJ's assessment of Plaintiff's testimony was not patently wrong, and that his discussion of the medical record and the medical opinions

substantially supported his RFC findings as to Plaintiff's physical limitations.

Finally, Plaintiff contends that the VE erred in testifying that the production worker job would be appropriate as described by the DOT in response to a hypothetical including a restriction to no concentrated exposure to hazards. Doc. 15, pp. 12-13. She argues that under the DOT, the core function of the work involves assembly, the exposure to dangerous tools and machinery throughout the work shift, thereby exceeding the threshold of no concentrated exposure established by the ALJ's hypothetical. Even if that were the case, the ALJ still found that Plaintiff could perform her past work as a surgical technician. Plaintiff argues that the surgical technician work would not have been available to her either had the ALJ incorporated limitations regarding her mild mental impairments. But as explained earlier, the ALJ reasonably relied on the objective medical record and the medical opinions on record that did not ascribe any such limitations. Accordingly, any error in the VE's testimony is harmless.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for disability insurance benefits is **AFFIRMED.** This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Commissioner of Social Security.

**IT IS SO ORDERED.**

**DATED: March 26, 2026**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**